ELLIOT S. BLUT
Nevada Bar No. 6570
BLUT LAW GROUP, PC
300 South Fourth Street, Suite 701
Las Vegas, NV 89101
Tel: (702) 384-1050
Fax: (702) 384-8565
Email: eblut@blutlaw.com

Attorney for Plaintiff,
NATALIE RHONE

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NATALIE RHONE, an individual, | Case No.: 2:18-cv-01327 |
| Plaintiff, | **Civil Rights** |
| vs. | COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES FOR DISABILITY DISCRIMINATION IN VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT AND THE NEVADA EQUAL ACCESS ACT (N.R.S. §651.050 *et seq.*) |
| WYNN LAS VEGAS L.L.C., a Nevada limited liability company; | |
| Defendant. | **Jury Trial Demanded** |

///

///

1  |  Plaintiff NATALIE RHONE complains of Defendant WYNN LAS VEGAS
2  |  L.L.C., and alleges as follows:

3

4  |  ## I.    INTRODUCTION

5  |  1.      In this action, Plaintiff NATALIE RHONE, a person with a disability,
6  |  seeks redress for the discrimination she suffered when attempting to patronize a place
7  |  of public accommodation owned and/or operated by Defendant WYNN LAS VEGAS
8  |  L.L.C.  Plaintiff seeks injunctive relief under Title III of the Americans with
9  |  Disabilities Act ("ADA") and the Nevada Equal Access Act ("NEAA") to have
10 |  Defendant modify its policies, practices, and procedures to ensure full and equal
11 |  access to persons with disabilities like Plaintiff.  Plaintiff also seeks damages under
12 |  the NEAA for the unlawful discrimination she has suffered, and Plaintiff is entitled to
13 |  her reasonable attorneys' fees, litigation expenses, and costs incurred in litigating
14 |  these civil rights claims.

15

16 |  ## II.    JURISDICTION AND VENUE

17 |  2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331
18 |  for violations of Title III of the ADA (42 U.S.C. §12181 *et seq*.).  This Court has
19 |  supplemental jurisdiction pursuant to 28 U.S.C. §1367 to adjudicate Plaintiff's claims
20 |  under the NEAA (N.R.S. §651.050 *et seq.*) because they are related to her federal
21 |  claims and arise out of a common nucleus of operative facts.

22 |  3.      Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is
23 |  founded on the fact that the real property at issue in this action is located in the
24 |  District of Nevada and that Plaintiff's causes of action arose in this District.

25

26 |  ## III.   PARTIES

27 |  4.      Plaintiff NATALIE RHONE is, and at all times relevant herein was, a

28

qualified individual with a disability as defined by the ADA and NEAA. Plaintiff suffers from severe allergies to a wide range of foods and food items. She is allergic to more than thirty (30) foods, including but not limited to, certain nuts, fruits, vegetables, and soy; products made with or derived from these foods; and items which have been in close proximity to these foods.  During an allergic reaction, Plaintiff suffers anaphylaxis, which is an acute reaction that quickly causes constriction of her airways, tightening of her throat, swelling, coughing, wheezing and extreme difficulty breathing.  Plaintiff has occasionally lost consciousness and required emergency medical treatment when suffering anaphylaxis.  Plaintiff's severe food allergies substantially limit one or more major life activities, including, but not limited to, breathing.  Plaintiff is therefore a person with a disability as defined by the ADA and NEAA. (42 U.S.C. §12102; N.R.S. §651.050).

5.      Plaintiff is, and at all times relevant herein was, a resident of Woodland Hills, California and a frequent and regular visitor to Las Vegas, Nevada.

6.      Plaintiff is informed and believes and thereupon alleges that Defendant WYNN LAS VEGAS, L.L.C. is the owner and/or operator of the Encore Beach Club (the "Club"), which is located in the Wynn/Encore resort at 3131 S. Las Vegas Boulevard in Las Vegas, Nevada.

## IV.   FACTS UPON WHICH ALL CLAIMS ARE BASED

7.      At all times relevant herein and continuing to present, Plaintiff was and is a qualified individual with a disability pursuant to the ADA (42 U.S.C. §12102) and the NEAA (N.R.S. §651.050).

8.      Plaintiff is a regular visitor to Las Vegas and is a member of the Wynn Insider program.  When visiting Las Vegas, Plaintiff prefers to stay at the Wynn and Encore Resorts; she especially enjoys the Club, which she has patronized on numerous occasions without incident.

9.     At all times relevant herein and continuing to present, the Club was and is a place of public accommodation pursuant to the ADA (42 U.S.C. §12181(7)) and the NEAA (N.R.S. §651.050(3)).

10.     At all times relevant herein and continuing to present, Defendant was and is the owner and/or operator of the Club.

11.     Plaintiff's severe food allergies result in the rapid onset of debilitating, life-threatening symptoms, including the inability to breathe.  To avoid and/or mitigate these symptoms, Plaintiff carries with her a variety of medications which have been prescribed by her doctor and/or which her doctor has mandated she use in the event of exposure to an allergen.  These medications include two EpiPens, Prednizone, Benadryl, Claritin and Pepcid.  Plaintiff must carry all of these medications with her at all times, because they are used in conjunction with each other to treat an allergic reaction and to stop it from progressing to a life-threatening emergency.

12.     On or around April 20, 2018, Plaintiff, her husband, and seven friends sought to patronize the Club to celebrate Plaintiff's birthday.  Prior to entering the Club, Plaintiff and other patrons' personal belongings were searched by security personnel.  Plaintiff is informed and believes and thereupon alleges that the security personnel are Defendant's employees, and/or that they are Defendant's agents or act on Defendant's behalf to provide security services at the Club.

13.     A security guard inspected Plaintiff's personal items and observed her food allergy medications, including her EpiPens.  The security guard informed Plaintiff that she could not enter the Club with her medications.

14.     Plaintiff explained to the security guard that she has severe food allergies and must have those medications with her at all times to avoid life-threatening emergencies that could arise from exposure to certain foods.  The security guard still refused to allow Plaintiff to enter to enter the Club with her medications.

15.     Plaintiff then requested to speak with a manager.  When he arrived, Plaintiff explained to the manager that she has severe food allergies, and that she must carry all of her medications with her at all times in the event of a life-threatening allergic reaction.  The manager examined her medications, and informed Plaintiff that he would allow her to enter the Club with her EpiPens, but not with the other medications.  The manager also told Plaintiff that she may be able to enter the Club if the medications were prescribed and if Plaintiff had a copy of the original prescription with her.

16.     Plaintiff explained to the manager that she required all of the medications on her person at all times, including the non-prescription medications, because they are used in conjunction with each other to stop or mitigate a life-threatening emergency.  She offered to show the manager a note from her doctor regarding the necessity of using all of the medications with each other.  Plaintiff further pointed out that most of the medications were in their original packaging and clearly labeled.  Nonetheless, the manager continued to refuse to allow her entry to the Club with her medications, instead informing her that the "medics inside the Club" could assist her in an emergency.

17.     Plaintiff then offered to deposit her medications in a box near the security station, where other patrons had deposited personal items that were not permitted in the Club (including medication).  Although this was still risky, given the rapid onset of her anaphylaxis, Plaintiff believed that keeping the medications in the box right outside of the Club entrance would allow her quick access to the life-saving medications in the event of an allergic reaction.  The security personnel and manager refused this offer, stating that the security guards "are not allowed to touch the box." Plaintiff reminded the security guards that her allergies constituted a disability and requested some sort of compromise.  The security guard who originally scanned her items told her that "anaphylaxis is not a disability," or words to that effect.

18.     After some time, the security personnel told Plaintiff that she was required to surrender the medications or leave, as she was holding up the line.  At that point a different security guard approached Plaintiff and told her that she was no longer welcome in the Club, even without her medications. Frustrated, embarrassed and upset, Plaintiff and her husband separated from the rest of the group and were unable to celebrate her birthday in the Club.

19.     Prior to this experience, Plaintiff had been able to patronize the Club with her medications without incident or complaint, including, but not limited to, a visit to the Club on or about April 30, 2016.  She has also had no issue patronizing other major clubs on the Las Vegas strip with her medications.

20.     As a result of her April 20, 2018 experience at the Club, Plaintiff suffered emotional distress.  Due to the Club's discriminatory security policies and procedures, she has been deterred from returning to the Club.  Unless resolved, these discriminatory policies will continue to deny full and equal access to Plaintiff and to other individuals with food allergies who wish to patronize the Club.  Unless resolved, the continuing existence of the Club's discriminatory policies and procedures will result in ongoing and irreparable injury to Plaintiff and other individuals with severe food allergies who are unable to equally access and benefit from Defendant's facilities, amenities, and services.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION: VIOLATION OF TITLE III OF THE ADA

21.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 20 of this Complaint.

22.     Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182(a).

23.     The Club is a place of public accommodation that is owned and/or operated by Defendant. 42 U.S.C. §12181(7).

24.     Plaintiff alleges that Defendant has discriminated against her on the basis of her disability in violation of Title III of the ADA and its implementing regulations.  Defendant's discriminatory conduct includes, but is not limited to:

    a) Discriminatory exclusion and/or denial of goods, services, facilities, privileges, advantages, accommodations, and/or opportunities;

    b)  Provision of goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals; and

    c) Failing to modify its policies, practices or procedures to ensure persons with disabilities are afforded full and equal access to its facilities, services, and amenities.

25.     Pursuant to the remedies, procedures, and rights set forth in 42 U.S.C. §12188 and 42 U.S.C. §12205, Plaintiff prays for judgment as set forth below.

**SECOND CAUSE OF ACTION: VIOLATION OF NEAA**

26.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 25 of this Complaint.

27.     The Club is a place of public accommodation that is owned and/or operated by Defendant and, therefore, it must comply with the NEAA, N.R.S. §651.050 *et seq.*

28.     The NEAA guarantees that persons with disabilities are entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and

accommodations of any place of public accommodation.  N.R.S. §651.070.

29.    Plaintiff alleges that Defendant has violated the NEAA by, <u>inter alia</u>, withholding, denying, or depriving, or attempting to withhold, deny, or deprive, Plaintiff of her right to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at the Club, and by failing to modify its policies, practices, and procedures to avoid discrimination based on disability.

30.    Pursuant to the remedies, procedures, and rights set forth in N.R.S. §651.090, Plaintiff prays for judgment as set forth below.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court issue relief pursuant to Title III of the ADA and the NEAA:

a)  Ordering Defendant to modify its policies, practices, and procedures to ensure persons with disabilities are afforded full and equal access to its facilities, services, and amenities;

b)  Awarding Plaintiff damages under the NEAA;

c)  Awarding Plaintiff's attorneys' fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. §12205 and/or the NEAA; and

d)  Such other and further relief as the Court may deem just and proper.

Dated:  July 18, 2018          BLUT LAW GROUP, PC

                                              */s/ Elliot S. Blut*

                              By:  _____
                                        ELLIOT S. BLUT
                                        Attorneys for Plaintiff, NATALIE RHONE

///

///

## __DEMAND FOR JURY TRIAL__

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues.

Dated:  July 18, 2018       BLUT LAW GROUP, PC

*/s/ Elliot S. Blut*

By:  _____

ELLIOT S. BLUT
Attorneys for Plaintiff, NATALIE RHONE